**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

|  |  |
|---|---|
| SWIMWAYS CORPORATION and, <br> VAP CREATIVE, LTD., <br><br>         Plaintiffs, <br><br>         v. <br><br> ZURU, INC., <br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 2:13-cv-00334-MSD-LRL<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT ZURU INC.'S REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Defendant ZURU Inc. ("ZURU") hereby files this reply to plaintiffs' opposition to

ZURU's motion for protective order.[1]  Because plaintiffs' opposition lacks merit entirely, this

Court should grant ZURU's motion.

I.     PLAINTIFFS CONCEDE THAT ZURU SHOULD NOT BE DEPOSED HERE, GIVEN
       THAT ZURU DOES NOT CONDUCT BUSINESS IN VIRGINIA

As described more fully in ZURU's moving brief, a presumption exists that Rule 30(b)(6)

"depositions of a foreign defendant corporation's officers or managing agents should be taken at

the corporation's principal place of business." *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471

(E.D. Va. 2010); *see also Botkin v. Donegal Mut. Ins. Co.*, No. 5:10cv00077, 2011 U.S. Dist.

LEXIS 63871, at *22-*23 (W.D. Va. June 15, 2011).[2]  This presumption may be overcome only

---

[1]     Plaintiffs have also simultaneously filed a motion to compel requesting that the Court
require ZURU's Rule 30(b)(6) deposition to take place in Virginia.  ZURU is timely filing an
opposition to that motion, along with this reply.

[2]     Plaintiffs mischaracterize and misstate ZURU's position.  According to plaintiffs, ZURU
has supposedly asserted that "*Outsidewall Tire* . . . create[d] a *per se* rule that corporate

1

"where the record presents unique or distinctive circumstances demonstrating either (i) that taking the depositions at the corporation's principal place of business would be unduly burdensome, or (ii) that, by virtue of the corporation's regular course of activity in the alternative location, the burden of requiring the officer or managing agent to be deposed there is minimal and the savings to the deposing party are substantial." *Outsidewall Tire Litig.*, 267 F.R.D. at 472.

Here, plaintiffs do not dispute—and therefore implicitly concede—that ZURU has no regular course of business activity involving travel to Virginia. For at least this reason, ZURU's deposition should not take place in Virginia.

II.    PLAINTIFFS' COUNSEL WOULD *NOT* BE ARRESTED, DETAINED, OR DEPORTED FOR TAKING ZURU'S DEPOSITION IN CHINA

Plaintiffs primarily argue that Ms. Mowbray's deposition should take place in Virginia because Chinese law "would prevent the deposition from occurring or otherwise operate to frustrate the deposing party's legitimate discovery-related objectives." (Pls.' Opp'n 3.)[3] Plaintiffs further claim that taking the deposition in China "could subject Defendant's Rule 30(b)(6) designee(s) and counsel for the parties to arrest, detention or deportation under Chinese law." (Pls.' Opp'n 1.) These arguments fail for a number of reasons.

Plaintiffs admit that they could legally depose Ms. Mowbray in China by submitting their request for deposition to China's Central Authority and obtaining that country's permission to

defendants are entitled to be deposed at their principal place of business." (Pls.' Opp'n 3.) ZURU never stated that this decision created a "per se rule." Rather, ZURU noted in its moving brief that a "presumption" exists that corporate defendants should be deposed at their principal place of business.

[3]    Interestingly, plaintiffs argue that ZURU's "reliance on *In re Outsidewall Tire Litigation* is misplaced." (Pls.' Opp'n 3.) However, plaintiffs then go on to rely on that very same case as support for their argument that Chinese law would supposedly "prevent the deposition from occurring or otherwise operate to frustrate the deposing party's legitimate discovery-related objectives." *Id.*

2

proceed with the deposition. (Pls.' Opp'n 3, 4.) Notably, however, that is not even necessary here. Plaintiffs conveniently ignore the fact that one of ZURU's principal offices is located in Hong Kong, a Special Administrative Region of the People's Republican of China. *See* http://zuru.com/zuru-contacts/. According to the U.S. Department of State's Legal Considerations bulletin, upon which plaintiffs so heavily rely, it is entirely permissible to take a voluntary deposition in Hong Kong and the deposing counsel would not suffer any adverse consequences (*i.e.*, arrest, detention, or deportation). *See* http://travel.state.gov/content/travel/ english/legal-considerations/judicial/country/hong-kong-sar-china.html. Specifically, that bulletin provides: "In Hong Kong, most voluntary depositions are taken in hotels and offices and do not involve participation by the U.S. consular officer. Telephone depositions are permitted. . . . Oral depositions . . . may be taken by . . . private attorneys from the United States . . . at the U.S. Consulate General or at another location such as a hotel or office . . . on notice. . . ." *Id.*

Here, ZURU is more than willing to produce Ms. Mowbray for the Rule 30(b)(6) deposition at ZURU's Hong Kong office (or at some other agreed upon location in Hong Kong). In fact, Ms. Mowbray frequently works out of ZURU's Hong Kong office and lives within a short distance from that office. For this reason as well, this Court should grant ZURU's motion.

III.     TAKING MS. MOWBRAY'S DEPOSITION BY VIDEOCONFERENCE IS A MORE THAN REASONABLE, VIABLE ALTERNATIVE OPTION

Plaintiffs also try to argue that taking Ms. Mowbray's deposition by videoconference is not a feasible option. As support, plaintiffs claim: "Due to the twelve (12) hour time difference between Norfolk, Virginia and Guangzhou, China, it would be a monumental task to coordinate the proceedings among the deponent, counsel for the parties, and the Court (to which the parties need immediate access should a dispute arise during the deposition)." (Pls.' Opp'n 4, 5 n.3.) This argument is simply wrong.

Contrary to plaintiffs' claim, it would not be a "monumental" task to coordinate Ms. Mowbray's deposition via videoconference. Ms. Mowbray is agreeable to submitting to a videoconference deposition, even if that means she is deposed at night (her time) due to the twelve hour time difference between Virginia and Hong Kong. In fact, that is how the parties conducted the recent settlement conference before Judge Miller. That conference lasted almost the entire day, and Ms. Mowbray participated by telephone (with the Court's permission) for the entire conference—even though it was nighttime in China during the proceeding.

If anything, it would be far more difficult to coordinate Ms. Mowbray's deposition if she were compelled to come to the United States for deposition. Ms. Mowbray serves as ZURU's Chief Operating Officer (COO), which means she has an incredibly busy calendar, including scheduled appointments for the foreseeable future. It would be extremely difficult for her to try to clear her calendar and find a time when she could take off for almost a week to come to the U.S. for deposition.

As mentioned, plaintiffs claim that a videoconference deposition is not viable because the parties would not have "immediate access [to the Court] should a dispute arise during the deposition." (Pls.' Opp'n 5 n.3) This argument makes no sense. It is ZURU's understanding that discovery disputes arising out of depositions are to be resolved through motion practice (after the deposition). They are not resolved by having the lawyers call the Court in the middle of a deposition so that the Court acts as a referee in resolving the disputes between the parties.

Plaintiffs further argue that "[t]he deposition, even if by videoconference, still would take place in China and still would be illegal under Chinese law." (Pls.' Opp'n 4 n.3.) This is not correct. As described above, such a videoconference would take place in Hong Kong, which is perfectly legal and permissible, as outlined by the U.S. Department of State. *See* http://

travel.state.gov/content/travel/english/legal-considerations/judicial/country/hong-kong-sar-china.html.

Plaintiffs also claim that "a videoconference deposition would be unnecessarily cumbersome." (Pls.' Opp'n 5.) By such a statement, plaintiffs ignore the critical fact that it would be far more "cumbersome" to Ms. Mowbray if she were forced to abandon her children and her post as ZURU's COO for almost a week to travel halfway around the world for the sole purpose of sitting for one lone deposition that would likely last only a few hours.

In any event, it would not be "cumbersome" for plaintiffs to depose her via videoconference, as plaintiffs would have this Court to believe. As one Virginia federal district court has already noted: "The court frequently conducts hearings via this video conference technology, and . . . believes it to be an excellent mechanism for the plaintiff to obtain the deposition of [a witness] without incurring the cost of physically traveling to [the witness's location outside of the district]. This technology allows both parties to see and interact with the witness. . . ." *Estate of Harvey v. Roanoke City Sheriff's Office*, No. 7:06cv603, 2007 U.S. Dist. LEXIS 71511, at *8 (W.D. Va. Sept. 26, 2007). For these reasons as well, this Court should grant ZURU's motion.[4]

IV.     SPECIAL CIRCUMSTANCES EXIST HERE UNDER LOCAL RULE 30(A) FOR NOT REQUIRING ZURU TO SUBMIT TO A DEPOSITION IN THIS DIVISION

Contrary to plaintiffs' claim, ZURU has not offered "vague assertions" as to why Ms. Mowbray's deposition should not take place in Virginia. (Pls.' Opp'n 1.) Rather, Ms. Mowbray,

---

[4]     Plaintiffs also argue that they "would be hindered in their ability to modify their deposition strategy during the course of the deposition, since deposition exhibits would have to be sent to the deponent in advance." (Pls.' Opp'n 5 n.3.) Such a claim hardly justifies requiring Ms. Mowbray to come to Virginia for deposition. To the extent that plaintiffs need to modify their strategy during a videoconference deposition, they could always fax additional documents to Ms. Mowbray during the deposition and ask her about them.

a mother of two (a one-year-old and a two-year-old), has submitted an affidavit demonstrating that a deposition in Virginia would cause her to be absent from her children for almost a week and further disrupt ZURU's affairs.  Both of these reasons constitute legitimate special circumstances as to why the deposition should not occur in Virginia under Local Civil Rule 30(A).  Plaintiffs' arguments to the contrary are without merit.

Plaintiffs rely on *Peerless Industries, Inc. v. Crimson AV LLC*, No. 11 C 1768, 2013 U.S. Dist. LEXIS 39913 (N.D. Ill. Mar. 22, 2013), as support for their argument that disruption of a foreign litigant's business affairs does not constitute justification for entry of a protective order. (Pls.' Opp'n 6.)  Plaintiffs' reliance on that unpublished, non-binding decision is wholly misplaced.

In that case, the plaintiff had sued a defendant that was based in Illinois where the action was pending.  Plaintiff desired to take the deposition of defendant's managing agent, a Chinese citizen and resident, in the United States.  To prevent the deposition from occurring in the U.S., the defendant offered to produce its managing agent in Taiwan for a videoconference deposition. Moreover, defendant in that case argued that traveling for a deposition would render hardship on his business.

The court rejected that argument, finding that the managing agent would "have to travel outside of China for the deposition regardless of where it takes place." *Id.* at *19.  The court further held:  "Although [the managing agent] contends that traveling for the deposition will render a hardship on . . . his business, he is a managing agent of [defendant], which is located in Illinois," where the case was pending." *Id.*

*Peerless Industries* is easily distinguishable from the present action.  Unlike the defendant in *Peerless Industries*, ZURU is not headquartered in Virginia—nor does it have any

6

offices here.  Moreover, Ms. Mowbray would not have to travel to Taiwan for her deposition if it were taken by videoconference, as did the managing agent in *Peerless*.  For these reasons, this Court should disregard *Peerless Industries*.

Plaintiffs also assert, rather callously, that "being away from one's children . . . does not constitute a 'special circumstance'" for relaxing the local rule's general requirement that Ms. Mowbray's deposition take place in Virginia.  Plaintiffs argue that she should be required to obtain childcare for the lengthy period of time she is gone.  (Pls.' Opp'n 6.)  In addition to the almost $15,000 that ZURU would have to spend sending Ms. Mowbray to the U.S. for deposition,[5] Ms. Mowbray should not have to bear the burden of locating[6] and paying for childcare—particularly when plaintiffs could easily depose her by videoconference.

For all of the above reasons, this Court should grant ZURU's motion for protective order.

Dated:  June 5, 2014                                    Respectfully submitted,

                                            _____/s/_____

                                            Cortland C. Putbrese, Esq.
                                            Virginia Bar No.: 46419
                                            *DUNLAP*WEAVER PLLC
                                            2307 East Broad Street, Suite 301
                                            Richmond, Virginia 23223
                                            804-977-2688
                                            804-977-2680 (fax)
                                            cputbrese@dunlapweaver.com

---

[5]      Plaintiffs also argue that ZURU "provides no support for [its] conclusory assertions" that Ms. Mowbray's trip would last almost a week and cost approximately $15,000, and "[a]s such, they are not proper grounds for entry of a protective order."  (Pls.' Opp'n 6.)  ZURU conducted research regarding the cost of airfare and hotel rooms, including the time it would take to travel to and from the U.S.  This information is available to the public (*e.g.*, the internet), and thus, the Court should be able to take judicial notice of these facts.  *See* Fed. R. Evid. 201; *Elcomsoft, Ltd. v. Passcovery Co.*, 958 F. Supp. 2d 616, 622 (E.D. Va. 2013) (taking "judicial notice that Russia is far from this District and that any willing witnesses will face significant travel costs").

[6]      ZURU notes it would be difficult for Ms. Mowbray to find suitable childcare.  That is because she would have to locate and hire someone she trusts and who is reliable, as that individual would be residing in her house and taking care of her two children while she is gone.

7

Thomas M. Dunlap, Esq.
Virginia Bar No.: 44016
David Ludwig, Esq.
Virginia Bar No.: 73157
*DUNLAP*WEAVER PLLC
211 Church Street SE
Leesburg, Virginia 20175
703-777-7319
703-777-3656 (fax)
tdunlap@dunlapweaver.com
dludwig@dunlapweaver.com

Counsel for Defendant ZURU Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of June 2014, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

John Swingle, Esq.
Williams Mullen, P.C.
222 Central Park Avenue, Suite 1700
Virginia Beach, VA 23462


/s/
Cortland C. Putbrese, Esq.
Virginia Bar No.: 46419
DUNLAPWEAVER PLLC
2307 East Broad Street, Suite 301
Richmond, Virginia 23223
804-977-2688
804-977-2680 (fax)
cputbrese@dunlapweaver.com